TAM:JJT:nl

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


ROBERT L. WARD, JR.        :

                      :

        Plaintiff,     :

                      :   NO. 1:CV-00-1126

        v.            :

                      :

DEFENSE LOGISTICS AGENCY    :   (KANE, J.)

DEFENSE DISTRIBUTION CENTER,   :

                      :

        Defendant.     :   (Electronically Filed)


## DEFENDANT'S BRIEF IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT


Defendant, Defense Logistics Agency Defense Distribution Center, submits this brief in support of his Motion for Summary Judgment.


## INTRODUCTION

The Complaint in this case alleges that from October 7, 1997, until his resignation from the Civil Service on January 7, 2000, Plaintiff Robert L. Ward, Jr. ("Ward") was harassed daily by his supervisor, Frank O'Brien.  Ward alleges a violation of the Rehabilitation Act of 1973, 29 U.S.C. Section 791, et seq.; Title I of the Americans with Disabilities Act, 42 U.S.C. Section 12101; and the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq.  As relief, he seeks "a reasonable compensatory settlement."

As discussed in detail below, Ward was employed as a Materials Handler, WG-6907-05, in the Storage Branch, DDSP-SS. He was assigned to operate an isle mobile hybrid crane vehicle (crane) to pick stock at various heights up to sixty (60) feet. He was required to wear a safety belt and later a shoulder harness while operating the crane. In May 1999, Ward filed a formal administrative EEO Complaint alleging Mr. O'Brien had harassed him by continuously asking him for medical documentation to support Ward's continuation on light duty based on his alleged inability to wear the harness and other restrictions. This allegation is apparently the basis for Ward's civil action.

### STATEMENT OF FACTS

On May 16, 1997, Ward suffered a work-related injury later determined to be an inguinal hernia. Declaration of Frank O'Brien attached hereto as Exh. A. He was off work as a result of his injury from June 4, 1997 to July 28, 1997, and during that period, surgery was performed on the hernia. Id. On June 26, 1997, Ward's doctor completed a CA Form 20 permitting Ward to return to duty with the restriction of no heavy lifting for six weeks. His doctor returned him to duty on July 28, 1997, with a lifting restriction of 45 pounds. Id. The Agency's health clinic imposed a "permanent" 45-pound lifting restriction. Id. This restriction did not significantly limit Ward's operation of the crane because he ordinarily would not be required to lift

-2-

more than 40 pounds.  Ward returned to duty on the aisle crane with the restriction imposed by his doctor.  Id.

On October 21, 1997, Ward visited the Agency's health clinic complaining that operating the crane hurt his left leg.  Id.  The health clinic put him on light duty until he could see his private physician.  Id.  Two days later, Ward presented a note from his private physician stating that Ward was able to return to duty, but was "to avoid wearing any weigh around the waist" (apparently in reference to the safety belt).  Id.  According to Mr. O'Brien, he took Ward off the crane and placed him on light duty on the floor in the "Active Items" area, expecting that the light duty would only be temporary because the restriction was not noted to be permanent.  Id.  In late December 1997, Mr. O'Brien asked Ward to obtain additional medical documentation to determine if the "no belt" restriction was still in effect.  Id. Ward told him he would not provide additional documentation.  Id. Ward was off work in early January 1988, and upon his return he gave the health clinic a note from his doctor with an "indefinite" 25-pound lifting restriction.  The heath clinic returned him to duty with this restriction.  Id.  Ward was kept on light duty.  Id.

In January 1998, DDSP replaced the safety belt with a shoulder harness.  Id.  The harness is attached around the employee's legs, shoulders, and waist.  Id.  Because at the time there still was no determination that the "no belt" and lifting restrictions were permanent, and knowing that the harness fits

loosely against the waist, Mr. O'Brien asked Ward in February to take the harness to his doctor to determine if he could wear it and return to crane duty.  Ward refused to take the harness and sign a receipt for it.  Id.

Mr. O'Brien gave Ward a letter dated April 7, 1997, formally requesting a determination from his private physician within 14 days whether the 25-pound lifting restriction was still in effect and whether Ward could wear a harness.  Id.  Before issuing the letter, Mr. O'Brien consulted with a health clinic nurse who agreed that additional information was necessary.  Id.  When Ward did not respond in 14 days, Mr. O'Brien asked him if he needed an extension and Ward answered no and stated that he was not going to respond.  Id.

On May 6, 1998, Ward was given another letter from Ken Slasemen, his first level supervisor, notifying Ward that in the absence of current medical information to support continuing restrictions, he was being returned to full duty as a crane operator, effective May 18, 1999.  Id.  In response, Ward visited the health clinic and told the nurse there that his 25-pound lifting restriction was permanent.  The health clinic noted the employee's statement and recommended a fitness for duty examination by the Agency.  Id.  Mr. Slasemen met with Ward on May 8, 1998, to ask again that Ward take the harness to his doctor, but Ward again refused.  Id.  Ward was then given a letter on May 27, 1998, directing him to return crane operator

-4-

duties within three days or provide current medical information substantiating his inability to do so.  Id.  Ward provided a doctor's slip dated June 1, 1998, stating:  "Should not wear a body harness at all to work in."  Mr. O'Brien continued to assign Ward to light duty on the floor.  Id.

Ward presented a doctor's slip dated October 28, 1998, with an indefinite lifting restriction of 25-pounds based on a diagnosis of degenerative disc disease.  Id.  Thereafter, Ward was involved in an automobile accident on November 17, 1998, and was returned to duty with lifting and stretching restrictions imposed by his doctor for two weeks.  Id.  Appellant was off-duty from January 6 through January 20, 1999.  Id.  Upon his return on January 21, 1999, the health clinic found him fit for duty with "current duty restrictions."  Id.  The health clinic later issued another return to duty note for January 21, 1999, noting that there were no restrictions in the doctor's slip Ward provided at the time he returned on January 21, 1999.  Exh. 30.

On April 15, 1999, Mr. O'Brien gave Ward a memo requesting he provide medical documentation as to whether he was then fit to return to crane duty.  Id.  Ward refused this request.  By memo of July 29, 1999, Mr. O'Brien ordered Ward to submit to a fitness for duty examination by an agency physician.  Id.  Ward refused this order.  Id.  This stalemate continued until Ward's resignation on January 7, 2000.  No action was taken to discipline Ward or remove him from his position for medical reasons.  Id.

-5-

Mr. O'Brien has requested other employees with medical restrictions to take the shoulder harness to their physicians to determine if they could wear the harness.  Id.  Two of these employees were white.  Unlike the other employees, Ward refused to have his physician examine the harness and obtain clarification regarding his medical restrictions.  Id.

**ARGUMENT**

**I.    STANDARD OF LAW FOR SUMMARY JUDGMENT.**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  In reviewing the evidence and facts, inferences must be viewed in the light most favorable to the non-moving party.  Matsushita Elec. Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al., 475 U.S. 574, 587 (1986); Williams v. Perry, 907 F. Supp. 838, 842 (M.D. Pa. 1995), aff'd, 72 F.3d 125 (3d Cir. 1995).

Once a moving party has carried his or her burden under Rule 56 of the Federal Rules of Civil Procedure, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . .  Where the record taken as a whole cannot lead a rational trier fact to find for the non-

moving party, there is no genuine issue for trial." <u>Williams v.</u>
<u>Perry</u>, 907 F. Supp. 838, 842; <u>Matsushita</u>, 475 U.S. 586-587.

II.    <u>**WARD CANNOT ESTABLISH A PRIMA FACIE CASE OF RACE AND/OR**</u>
       <u>**DISABILITY DISCRIMINATION**</u>.

   A.    <u>**The Elements of a Prima Facie Case of Disparate**</u>
         <u>**Treatment Based on Race and/or Disability**</u>.

   Title VII of the Civil Rights Act of 1964, as amended, 42
U.S.C. § 2000e, prohibits discrimination on the basis of race,
color, religion, sex or national origin.  Disparate treatment
cases involve claims that the employer treats some employees less
favorably than others because of their membership in a protected
class.  In these types of cases, evidence of discriminatory
intent is crucial.  <u>International Brotherhood of Teamsters v.</u>
<u>U.S.</u>, 431 U.S. 324, 336 n.15 (1977); <u>McDonnell Douglas Corp. v.</u>
<u>Green</u>, 411 U.S. 792, 805-06 (1973); <u>Furnco Construction Corp. v.</u>
<u>Waters</u>, 438 U.S. 567 (1978).

   In order to make out a case of race discrimination, Ward
must first establish by a preponderance of the evidence a <u>prima</u>
<u>facie</u> case of employment discrimination.  <u>Texas Department of</u>
<u>Community Affairs v. Burdine</u>, 450 U.S. 248, 252-253 (1981).  A
claim of racially disparate treatment requires a showing that (1)
plaintiff is a member of a racial minority; (2) he was qualified
for the position; (3) he was subjected to an adverse employment
action; and (4) other employees not in a protected class were
treated more favorably.  <u>Saint Mary's Honor Center v. Hicks</u>, 509
U.S. 502 (1993).

Under the Rehabilitation Act, a disparate treatment case based on disability requires a prima facie showing that plaintiff (1) is disabled; (2) was otherwise qualified for the position; (3) was subjected to an adverse employment decision; and (4) that other non-disabled employees were treated more favorably. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993); Taylor v. Phoenixville School District, No. 96-CV-8470, 1998 WL 133628, at 5 (E.D. Pa. Mar. 20, 1998)(attached hereto).

Title VII and the Rehabilitation Act both employ the same sequential burden-shifting framework. If plaintiff establishes a prima facie case, then the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its actions. Williams at 842. In order to satisfy this burden, defendant need only "introduce evidence which taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). If the defendant meets his burden, then the burden shifts to plaintiff to demonstrate defendant's proffered reason is mere pretext for discrimination. The plaintiff can meet this burden by submitting evidence that could lead the trier of fact to reasonably disbelieve the employer's articulated reasons or believe that discriminatory reasons were more likely than not a motivating cause of the employer's decision. See Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994).

-8-

**B.    Ward Cannot Demonstrate a Prima Facie Case of Disparate Treatment Due to His Race and/or Disability.**

In this case, the crux of Ward's claim stems from his contention that his supervisor, O'Brien, harassed him regarding medical documentation.  Ward appears to allege that O'Brien harassed him due to his race and disability.  Assuming Ward can meet the first prongs of a prima facie case of race and disability discrimination, he cannot meet the third and fourth prongs.  Specifically, Ward cannot show that (i) he was subjected to an adverse employment action, or (ii) Defendant treated non-protected class employees more favorably.

**1.    Ward Cannot Identify Non-Protected Class Employees Who Were treated More Favorably.**

It is fundamental that to make a comparison of a plaintiff's treatment to that of non-protected class employees, the plaintiff must show that the "comparables" are similarly situated <u>in all respects</u>.  Thus, to be deemed "similarly situated," the individuals with whom the plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.  <u>Mitchell v. Toledo Hospital</u>, 964 F.2d 577, 583 (6th Cir. 1992)(citations omitted; emphasis in original); <u>accord</u>, <u>Smith v. Stratus Computer, Inc.</u>, 40 F.3d 11, 17 (1st Cir. 1994),

cert. denied, 115 S. Ct. 1958 (1995).  See also Marshall v.
Westinghouse Elec. Corp., 576 F.2d 588, 592 (10th Cir. 1978).

     In this case, there is no evidence in the record that
O'Brien has treated non-disabled employees or non-African-
American employees more favorably.  In fact, as to race
discrimination, the evidence establishes the contrary.  O'Brien
also requested white employees to have their physician examine
the harness to ensure that the safety equipment would not violate
their medical restrictions.  O'Brien Affidavit at ¶ 39.   In sum,
Ward cannot demonstrate a prima facie case of disability
discrimination or race discrimination.


          2.  **Ward Was Not the Subject of Adverse Employment Actions**.

     Likewise, Ward cannot show that he was the subject of an
adverse employment action.  An adverse employment action is one
that "alters the employee's 'compensation, terms, conditions, or
privileges of employment,' deprives him or her of 'employment
opportunities,' or 'adversely affect[s] his [or her] status as an
employee.'"  See Robinson v. City of Pittsburgh, 120 F.3d 1286,
1299-1300 (3d Cir. 1997)(alterations in original)(quoting 42
U.S.C. § 2000e-2(a)).  An action qualifies as an adverse
employment action if it impairs the plaintiff in present or
future employment situations.  See Nelson v. Upsala College, 51
F.3d 383, 387-88 (3d Cir. 1995).  For example, the denial of
benefits, see Hishon v. King & Spalding, 467 U.S. 69, 75 (1984),
or a dramatic downward shift in skill level or job

responsibilities, see Dahm v. Flynn, 60 F.3d 253, 257 (7th Cir. 1994), constitutes adverse employment action. Conversely, a transfer of position, see Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996); negative performance evaluations alone, Id. at 442; harsh criticism or counseling, see Simmerman v. Hardee's Food Sys., Inc., Civ. No. A94-6906, 1996 WL 131948, *14 (E.D. Pa. March 22, 1996); and general allegations of being treated "differently and more harshly," see Moore v. Grove North America, Inc., 927 F. Supp. 824, 831 (M.D. Pa. 1996), do not qualify as adverse employment actions.

In this case, Ward does not have evidence that he sustained an adverse employment action. Although he maintains that O'Brien harassed him to provide medical documentation regarding his alleged physical restrictions, there is no evidence of record that O'Brien's actions altered Ward's conditions of employment, deprived him of employment opportunities, or adversely affected his status as an employee. Specifically, Ward was not disciplined nor terminated. Moreover, he was maintained on light duty during the period of time in question. His resignation from federal service was voluntary.

### 3. **Ward Was Not Constructively Discharged**.

Ward may argue that his voluntary resignation constitutes a constructive discharge and that, therefore, there is evidence of an adverse employment action. Yet, Ward cannot demonstrate he was subjected to a constructive discharge.

To establish a constructive discharge claim the plaintiff must establish that the employer knowingly permitted conditions of discrimination in employment "so intolerable that a reasonable person would be forced to resign."  See Levendos v. Stern Entertainment, Inc., 860 F.2d 1227, 1232 (3d Cir. 1988) (Levendos I), quoting Goss v. Exxon Office Systems Co., 747 F.2d 885, 887 (3d Cir. 1984).  She must establish more than subjective perceptions of unfairness or harshness or a stress-filled work environment.  See Gray v. York Newspapers, Inc., 957 F.2d 1070, 1083 (3d Cir. 1992), and see Clowes v. Allegheny Valley Hospital, 991 F.2d 1159 (3d Cir. 1993), cert. denied, 510 U.S. 964, 114 S. Ct. 441, 126 L. Ed. 2d 374 (1993).

Satisfying these criteria is not an easy task, "Demonstrating constructive discharge requires a showing that 'a reasonable employee would have felt compelled to resign under the circumstances of the case.'"  See Darnell v. Target Stores, 16 F.3d 174, 177 (7th Cir. 1994).  "To establish a 'constructive discharge,' a plaintiff must show that the employer 'deliberately ma[de his] working conditions so intolerable that [he was] forced into a involuntary resignation.'"  See Stetson v. NYNEX Service Co., 995 F.2d 355, 360 (2d Cir. 1993).  See also, Clowes, supra. The plaintiff's "working conditions" must "have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  See Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1639 (11th Cir. 1987).

In this case, Ward voluntarily resigned on January 7, 2000.

-12-

To the extent he is alleging constructive discharge, there is insufficient evidence from which a jury could conclude that a reasonable person in his position would resign under the circumstances.  See <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070 (3d Cir. 1992).

     **C.**   **<u>Defendant is Entitled to Summary Judgment on Ward's Hostile Work Environment Claim</u>**.

    Although not clear, Plaintiff is apparently also alleging a hostile work environment based on his disability.  In addition, the reference to Title VII implies that this allegation extends to Plaintiff's race (black).

    In order to establish a claim for employment discrimination due to a hostile work environment, a plaintiff must establish, by the totality of the circumstances, the existence of a hostile or abusive environment that is severe enough to affect the psychological stability of the employee.  <u>Benton v. Perry</u> (No. 95-CV-0366, M.D. Pa. 1997), <u>aff'd</u>, 142 F.3d 427 (3d Cir. 1998), citing <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1081 (3d Cir. 1996).  In order to succeed on his claim, Plaintiff must demonstrate that: (1) he suffered intentional discrimination based on his membership in a protected class or classes; (2) the discrimination was pervasive and regular; (3) he was detrimentally affected by the discrimination; (4) a reasonable person of the same protected class or classes would also be detrimentally affected by the same discrimination; and (5) the

work environment was hostile or abusive, the court must examine the totality of the circumstances, including (1) the frequency or severity of the conduct; (2) whether the conduct is physically threatening or humiliating, or merely an offensive utterance; and (3) whether the conduct unreasonably interfered with the victim's work performance. Williams v. Perry, 907 F. Supp. 838, 846 (M.D. Pa. 1995), aff'd 72 F.3d 125 (3d Cir. 1995).

Assuming Plaintiff's complaint sufficiently alleges a violation of Title VII and the Rehabilitation Act, Plaintiff cannot make out a claim of hostile environment on the facts presented by this case. Applying the factors set forth in Aman and Williams, Plaintiff cannot show that he was detrimentally affected by Mr. O'Brien's continuing pursuit of clarification of his medical status. Plaintiff was never taken off light duty and was not disciplined for his refusal to provide information or to submit to a fitness for duty examination. Mr. O'Brien's actions were neither threatening nor humiliating and a reasonable person would not have been detrimentally affected by them.

III. **EVEN IF WARD COULD ESTABLISH A PRIMA FACIE CASE OF RACE OR DISABILITY DISCRIMINATION, DEFENDANT IS STILL ENTITLED TO SUMMARY JUDGMENT BECAUSE HE CAN ARTICULATE LEGITIMATE NON-DISCRIMINATORY REASONS WHICH WARD CANNOT SHOW ARE PRETEXT FOR DISCRIMINATION.**

Once the plaintiff has met his burden of coming forward with evidence of a prima facie case, the burden shifts to the employer

to demonstrate a legitimate non-discriminatory reason for his actions.  The determination that a defendant has met this burden of production and has thus rebutted any legal presumption of intentional discrimination does not necessarily involve a credibility assessment.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993); see also Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)(defendant "need not prove that the tendered reason actually motivated [his] behavior, as throughout this burden shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff.").

If defendant meets his burden, the plaintiff is required to show that the employer's proffered reason is pretextual.  See, e.g., Canitia v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1066 (6th Cir. 1990)(noting that once defendant articulates a legitimate, non-discriminatory reason, "plaintiff, who bears the burden of persuasion throughout the entire process, then must demonstrate 'that the proffered reason was not the true reason for the employment decision'.")(quoting Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

In examining pretext, the question is whether the employer honestly believed its proffered reason.  The fact that the employer's decision is a mistake or based on bad policy, or even stupid, is not evidence that the proffered explanation is pretextual.  In short, to prevent summary judgment, the plaintiff must present evidence that the defendant is insincere.  Essex v.

-15-

<u>United Postal Serv.</u>, 111 F.3d 1304, 1310 (7th Cir. 1997); <u>see</u>
<u>also</u> <u>Ruby v. Springfield R-12 Public School Dist.</u>, 76 F.3d 909,
911 n.7 (8th Cir. 1996)(inquiry on pretext limited to whether
employer gave "honest explanation of its behavior, rather than to
weigh the wisdom of any particular employer decision; Title VII
does not authorize federal courts to sit as a super-personnel
department that reexamines an entity's business decisions.");
<u>Grimes v. Texas Dep't of Mental Health and Mental Retardation</u>,
102 F.3d 137, 143 (5th Cir. 1996)("evidence of mere dislike is
not enough to prove pretext under Title VII.").

Therefore, assuming Ward could establish a prima facie case
of either disparate treatment and/or retaliation, O'Brien has a
legitimate, non-discriminatory reason for his decision to request
that Ward provide medical documentation related to his alleged
restrictions. This evidence, taken as true, clearly permits the
conclusion that there was a non-discriminatory reason for the
request for medical documentation. There is no evidence of
record which even remotely suggests that O'Brien's proffered
reason is pretextual.

## CONCLUSION

In accordance with the foregoing discussion, the Court
should find that there are no genuine issues of material fact.
Defendant is entitled to judgment as a matter of law. Therefore,

-16-

the Court should grant Defendant's motion for summary judgment on Plaintiff's Complaint.

                              Respectfully submitted,

                              THOMAS A. MARINO
                              United States Attorney


                                s/ Joseph J. Terz
                              Joseph J. Terz
                              Assistant U.S. Attorney
                              228 Walnut Street, Suite 220
                              P.O. Box 11754
                              Harrisburg, Pennsylvania  17108
                              Attorney ID. No. PA55480
                              (717) 221-4482
                              (717) 221-4582 (Facsimile)
                              joseph.terz@usdoj.gov

Dated:  June 19, 2003

TAM:JJT:nl

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


ROBERT L. WARD, JR.              :
                                 :
              Plaintiff,         :
                                 :    NO. 1:CV-00-1126
          v.                     :
                                 :
DEFENSE LOGISTICS AGENCY         :    (KANE, J.)
DEFENSE DISTRIBUTION CENTER,     :
                                 :
              Defendant.         :    (Electronically Filed)


### CERTIFICATE OF SERVICE


The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 19th day of June, 2003, she served a copy of the attached

### DEFENDANT'S BRIEF IN SUPPORT OF ITS
### MOTION FOR SUMMARY JUDGMENT

electronically and/or by placing a copy in a postpaid envelope addressed to the person hereinafter named, at the places and addresses stated below, which is the last known addresses, and by depositing said envelopes and contents in the United States Mail at Harrisburg, Pennsylvania to:


           Mr. Robert L. Ward, Sr.
           1630 Catherine Street
           Harrisburg, Pennsylvania  17104


                      s/Naomi Losch
                     Naomi Losch
                     Legal Assistant

N:\NLosch\terz\docs\ward brief in support of defendant's motion for summary judgment.wpd