| SWORN STATEMENT | IMPORTANT: Read the Privacy Act Statement before completing this form. | REPORT NUMBER |
|---|---|---|

### PRIVACY ACT STATEMENT

1. **AUTHORITY:** Section 21, Internal Security Act of 1950 *(Public Law 8-831)*; DoD Instruction 5200.22, Reporting of Security and Criminal Violations; and Deputy Secretary of Defense Memorandum dated 7 May 1974.
2. **PURPOSE:** Records the sworn statement given by an individual in connection with an incident, accident, or suspected violation under investigation, regardless of the individual's relationship to the investigation.
3. **ROUTINE USES:** Information may be disclosed for those routine uses listed in DLA System Notice S160.50DLA-I as follows: For any of the DLA blanket routine uses set forth at the beginning of DLA's listing of systems of records notices.
4. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL OF NOT PROVIDING INFORMATION:** Disclosure is voluntary. However, individuals assigned to or employed by DLA who refuse to make disclosure may be subject to administrative sanctions.

| LOCATION | DATE | TIME |
|---|---|---|
| Building #400, DDSP, New Cumberland, PA. | 7 October 1998 | 1510 |

| LAST NAME, FIRST NAME, MIDDLE NAME | PLACE OF BIRTH *(City and State or Country)* | DATE OF BIRTH |
|---|---|---|
| Ward, Robert L., JR. | Memphis, TN. | 24 July 1959 |

| GRADE/STATUS | NAME OF ORGANIZATION OR HOME ADDRESS |
|---|---|
| WG-05 | DDSP-SS |

I, Robert L. Ward., JR. _____, want to make the following statement under oath:

Q. What is your official title, schedule and Work Location?
A. Materials Handler, Building #2001, DDSP, New Cumberland, PA., Mon. through Fri., 1430 to 2300 Hours.
Q. How long have you been employed in that position?
A. Since I transferred from Memphis, TN., on 5 December 1995.
Q. Who is your First Line Supervisor?
A. Kenneth Slazeman.
Q. Are you acquainted with, or have you ever worked for Rodney J. Anastasi?
A. Yes, I worked for him for approximately six (6) months when I first arrived at DDSP, New Cumberland, PA. I was then transferred to Mr. Steve George's Area and then I was transferred back to Mr. Anastasi where I worked for approximately one (1) year before Mr. Anastasi was transferred to Third Shift.
Q. Have you ever had any problems with Mr. Anastasi?
A. Yes, I had numerous problems with Mr. Anastasi and the problems lasted until Mr. Anastasi transferred to Third Shift. Mr. Anastasi is very arrogant in the way that he treats his employees. When I first arrived at DDSP, New Cumberland, PA., Mr. Anastasi was on vacation and I did not get to meet him until approximately three (3) days later. When I first met Mr. Anastasi he introduced himself by stating, "My name is Rodney Anastasi, I am your Supervisor and I want to be Corporate." I had no idea what he meant by that statement. I then told him my name and he just said OK, and walked away without even shaking my hand. Around a week later an incident occurred that involved Mr. Michael Lee and I. At the time Mr. Lee and I were coming from the In-Flight Cafeteria and when we walked by the Police Officer into the Controlled Area Mr. Anastasi walked in with us, jumped on his cart and drove back to the Bin Area. Mr. Anastasi did not say anything to us or offer us a ride. When Mr. Lee and I arrived back at the Bin Area we observed Mr. Anastasi standing by the door looking at his watch. We approached Mr. Anastasi and when we did he stated that we were late. We replied that we were just a few minutes late and why is he hassling us when none of the other employees were back yet from their lunch break and if we were late then so were they. Mr. Anastasi did not reply, he just walked behind me as I was walking toward my Hybrid Crane and during this time he was saying something to me in a low voice, but I could not understand what he was saying. Another incident occurred after I was put back under Mr. Anastasi after working for Mr. George. During this incident it was 1430 Hours, I had just started my shift and was at Roll Call in the Break Room. During Roll Call the Work Leader stated that this evening the less senior employees were going to be detailed to work in the Pack Area. Mr. Anastasi entered the Break Room and stated to the employees, "Listen up, these are the ten (10) Junior Employees that will be sent to the Packing Area and I was one of the employees whose name Mr. Anastasi called out. At this time there were approximately 23 Employees in the Branch that were junior to me. I brought this to Mr. Anastasi's attention and he just stated, "You are going." I then excused myself from the Break Room and went to see my Branch Chief, Mr. O'Brien. I was telling Mr. O'Brien about the incident when Mr. Anastasi walked into the Branch Office. Mr. Anastasi went over to Mr. O'Brien's desk and Mr. O'Brien asked Mr. Anastasi what was going on and Mr. Anastasi stated that he had made a mistake. That he had read the list upside down. Although Mr. Anastasi admitted that he had made a mistake I was still detailed to the Pack Area, so I took leave that day due to the harassment.
Q. Was there ever an occasion that the Depot was closed due to a heavy snow fall and Mr. Anastasi made you remain at work until your shift was over?
A. Yes, I remember that snow storm, it occurred in 1995. I cannot remember if I was able to go home or not. Some of the employees Mr. Anastasi allowed to go home and some he made stay at work until the work was finished.
Q. Did Mr. Anastasi go home when the Depot was closed?
A. Yes, I think that he did.
Q. Are you acquainted with a Tammy L. Slothower?
A. Yes, she was a Co-Worker on Second Shift.
Q. Have you ever observed any problems between Ms. Slothower and Mr. Anastasi?
A. I had not observed any problems, but I feel that Mr. Anastasi fell for Ms. Slothower. Ms. Slothower was a new employee,

A

| INITIALS OF PERSON MAKING STATEMENT | PAGE 1 OF 2 PAGES |
|---|---|
| RLW | |

DLA FORM 1623, JUL 90 *(EG)*    PREVIOUS EDITION MAY BE USED UNTIL EXHAUSTED.    PerFORM (DLA)

STATEMENT (Continued)
but Mr. Anastasi would never tell her to stay busy like he would all the other employees. Mr. Anastasi and Ms. Slothower would also take a lot of smoke breaks together and some of these breaks would take 15 to 20 minutes. Mr. Anastasi and Ms. Slothower would take these brakes before and after the regular breaks. Mr. Anastasi would get on the Hybrid Crane with Ms. Slothower. The Crane was on the second level and they would travel to the back of the Aisle and then get off and go on smoke breaks.
Q. To your knowledge has Mr. Anastasi and Ms. Slothower ever been involved in any type of personal relationship?
A. Yes, I believe they were. I can remember a time when Mr. Slothower was on light duty and Mr. Anastasi assigned her to work in the DDSP-SS, Office and during the time she was in the Office Mr. Anastasi had his Office curtain shut so no one could see inside. I was also told by Mr. Robert Wallace that on one occasion he observed Mr. Anastasi and Ms. Slothower, one night after work at Nicks' Bar and Restaurant located in New Cumberland, PA.
Q. Did Ms. Slothower ever state to you that Mr. Anastasi's conduct was offending her?
A. No, she seemed to be very happy when she was with Mr. Anastasi.
Q. Have you ever observed Mr. Anastasi at work in what appeared to be an intoxicated condition?
A. No, I never smelled any alcohol on him, but on one occasion I detected the odor of marijuana on Mr. Anastasi clothing. This occurred right after the lunch break which would have been around 1915 Hours. On this occasion I was in the DDSP-SS, Office with Mr. Anastasi. I was a Union Steward and at the time I was representing Herman Joppy on a disciplinary matter and when Mr. Anastasi leaned over to give me a copy of the disciplinary action I detected the odor of marijuana.
Q. Do you feel that management is protecting Mr. Anastasi?
A. Yes, I feel that Mr. Anastasi is being protected by someone. With all of the complaints that have been made against Mr. Anastasi you would have thought that something would have been done by now.
Q. Did you ever hear Ms. Slothower make any inappropriate sexual remarks?
A. No, even when I worked beside her on Second Shift I have never heard her make any sexual remarks.
Q. Is there anything else that you want to add or delete to this statement?
A. Just that I am Mr. Davis' Union Representative and I feel that Mr. Anastasi and Ms. Slothower both conspired to get Mr. Davis removed when Ms. Slothower charged him with sexual harassment, stating that Mr. Davis had inappropriately touched her. I feel that Mr. Davis was no where near Ms. Slothower when the incident was allegedly reported to have happened. In addition I am now attempting to schedule a meeting with the new DDSP, Commander in regards to Mr. Davis. Mr. Davis, who still works for Mr. Anastasi, claims that Mr. Anastasi is still harassing him, that Mr. Anastasi keeps coming to Mr. Davis' work station and just stands there and stares at Mr. Anastasi for long periods of time. Mr. Davis stated that Mr. Anastasi does not say a word he just stares at Mr. Davis. Mr. Davis is trying to get moved to a different area under new Supervision--------------------------END.

---

STATEMENT CONTINUED ON ADDITIONAL PAGES   ☒ NO   ☐ YES. # of additional pages: _____

**AFFIDAVIT**

I, Robert L. Ward, JR. , have read or have had read to me this statement which begins on Page 1 and ends on Page __2__ . I fully understand the contents of the entire statement made by me. The statement is true. I have initialed all corrections and have initialed the bottom of each page containing the statement. I have made this statement freely without hope of benefit or reward, without threat of punishment, and without coercion, unlawful influence, or unlawful inducement.

_____
(Signature of Person Making Statement)

WITNESSES:

_____     _____
(Typed or Printed Name and Signature)     (Typed or Printed Name and Signature)

_____     _____
(Name of Organization or Home Address)     (Name of Organization or Home Address)

OATH:
Subscribed and sworn to before me, a person authorized by law to administer oaths, this __8__ day of __October__ , 19 __98__ .

_____
(Signature of Person Administering Oath)

William T. Hukill
(Typed or Printed Name of Person Administering Oath)

at Building #400, DDSP, New Cumberland, PA.   .   Title 5 USC Section 303b
(Authority to Administer Oaths)

NOTICE: Additional pages must contain the heading "STATEMENT OF _____ TAKEN AT _____ DATED _____ CONTINUED." The bottom of each additional page must bear the initials of the person making the statement and be initialed as "PAGE ____ OF ____ PAGES."

INITIALS OF PERSON MAKING STATEMENT

PAGE 2 OF __2__ PAGES

DLA FORM 1623, JUL 90 (REVERSE) (EG)

Mar. 20, 1997

Dear Equal Employment Opportunity Commission

This letter is submitted in regard to the incident happen to Robert L. Ward Jr , being belittling by his supervisor on Mar. 11, 1997, at 2:45 pm in storage breakroom 4. Employees was in breakroom for row call waiting on supervisor and work leader, they enter the breakroom Mr Rodney Anastasi announced that five jr employees need to go to packing and ask is there any volunteer two employees said they will go that left three Mr. Bill Mcelroy call three senority employees names out instead of the employees with less senority. My name was call and Iam a senority employee . I ask Mr. Bill Mcelroy to call the five name out again, i ask him what my name was callfor as a senority employee, he said Mr. Rodney Anastasi said to pick you  Mr. Anastasi reply with a yell at me and said , i told him to call it , as aFederal Government employee with 10 yrs of senority i was intimidated by that selection.

Thank you
Robert L Ward Jr

*Robert L. Ward Jr.*

MAR 2 0 1997
Received in EEO office
DDRE - DK

AFFIDAVIT

STATE OF PENNSYLVANIA

COUNTY OF YORK

I, **Robert Lee Ward, Jr.** (race: Afro-American; color: Black; disability: Degenerative disk disease; age: 39; sex: Male), Material Handler, WG-6907-5, Defense Logistics Agency, Defense Distribution Susquehanna, Pennsylvania, New Cumberland, Pennsylvania, make the following statement freely and voluntarily to Beth Day, who has identified herself to me as an EEO Contract Investigator for the following federal agency: Defense Logistics Agency Administration, investigating a complaint filed by Phyllis May Holliday, knowing that this statement is not confidential and may be shown to the interested parties (those with a legal right to know). I hereby solemnly swear:

1. My position title is Material Handler, WG-6907-5. This is the same position I held at the time of the action at issue. My organizational unit is Defense Logistics Agency, Defense Depot Susquehanna, DDSP-SS, New Cumberland, Pennsylvania. This is the same organizational unit I worked in at the time of the action at issue. My first level supervisor is Charlie Shipe, Material Handler Supervisor, since about two (2) weeks. My first level supervisor at the time of the action at issue was Ken Slaseman, Material Handler Supervisor. My second level supervisor is Frank O'Brien, Branch Chief. My direct work relationship to Complainant Holliday is co-worker.

2. Regarding Phyllis May Holliday's allegation that she was discriminated against on the bases of race, color, disability, age and sex when on February 2, 1999 her supervisor did not respond to her request for assistance in dealing with a co-worker who made derogatory statements, I offer the following testimony.

3. My race is Afro-American. My color is Black. I do consider myself to be disabled. My disability is degenerative disk disease. I was aware of Complainant Holliday's disability (weight restriction) at the time of the action at issue. I was aware as the Union Representative who assisted Complainant in her transfer within EDC. My age is 39. My date of birth is July 24, 1959. My sex is Male.

4. The knowledge I have regarding Complainant Phyllis Holliday's allegation that on February 2, 1999 her supervisor, Ken Slaseman, did not respond to her request for assistance in dealing with a co-worker who made derogatory statements, I recall on February 2, 1999 at about 2:45 p.m. Complainant was doing put-aways. I was also doing put-aways. I acknowledge Mr. Jim Lippart telling Complainant not to put that material away. Mr. Jim Lippart told me not to also. I asked Mr. John Lewis whether material should be put up. Mr. John Lewis said yes. Mr. Jim Lippart told me again not to. I said Mr. John Lewis told me to put that material away.

B

AFFIDAVIT

5. Mr. Jim Lippart said something to Complainant. She asked why he (Mr. Jim Lippart) was so angry. Mr. Jim Lippart replied "Shut up, Black Bitch! I am not talking to you!" *RLW* Complainant said Mr. Jim Lippart should not talk to her like that. Mr. Jim Lippart said something inappropriate twice more. *and Fuck you Black Bitch*

6. Complainant went into the office to call Mr. Ken Slaseman. Complainant said Mr. Ken Slaseman would come down. About one and one half hours went by, it was right after 4:30 p.m. break, I went to ask Mr. Ken Slaseman to come. I said there was an incident and that it was urgent that Mr. Ken Slaseman come down. Mr. Ken Slaseman did not show by the end of second shift (11:00 p.m.).

7. Mr. Ken Slaseman did not respond to Complainant's telephonic request for assistance. Mr. Ken Slaseman did not respond to my personal request on behalf of Complainant Holliday. My personal request to Mr. Ken Slaseman was for him to come to Active Items as there had been a confrontation. Complainant was with me at that time.

8. I can describe the workplace environment. Mr. Complainant told me Frank O'Brien told her to stay away from me. I am Vice President AFGE. Complainant told me Mr. John Lewis asked her for her Social Security Number. Complainant said she did not give out her Social Security Number to everybody. Mr. John Lewis said he was tired of "y'all" *RLW* people. This was a racial slur The work is not hard. There is plenty of work, some days too much. The co-workers are not real friendly, but they are not real unfriendly.

9. There are witnesses I propose be interviewed. They are the entire Active Items second shift Monday through Friday. The work unit, at that time, included myself, Mike Hart, Sam, Complainant Phyllis Holliday, Jim Lippart and John Lewis.

10. I have witnessed discrimination since December 1995 when I came here. In Active Items, I think there is discrimination. My own co-workers told management I am not doing my job, (Ken Slaseman told me) even though my work records substantiate that I am doing my job as well as helping out co-workers. Co-workers went to Frank O'Brien, not Ken Slaseman.

11. I can describe the work environment. Complainant Phyllis Holliday and I work on second shift. Her and I are the only two (2) African-Americans. The employees on second shift in Active Items can testify that several times Ken Slaseman approached Complainant Phyllis Holliday telling her not to leave for lunch early - even though Ken Slaseman is already in the cafeteria, eating, when Complainant Phyllis

*Page 2 of 3 Pages*       *Affiant's Initials*

AFFIDAVIT

Holliday arrives in the cafeteria. Another employee (race: Caucasian; sex: Female; disability: None, that I am aware of; age: I don't know) came aboard and management rolled out the red carpet. This employee is a WG-2 or WG-3 and she arrived no more than two (2) months ago.

12. Complainant contacted Security Police regarding the incident with Mr. Lippart, but they never came to talk to anyone in Active Items. Complainant talked to Mr. O'Brien and Mr. Messner regarding Ken Slaseman not responding to her request for assistance. Mr. Messner said he was going to handle the issue and asked Complainant not to go to EEO.

13. I know during a meeting with EEO Counselor Mattie Taylor, Mr. Jim Lippart admitted calling Complainant a black bitch, but denied using profane language (the "F" word).

14. I do not have documentation to support my testimony.

15. I can suggest witnesses who have knowledge of the discrimination at issue. They are the staff of Active Items second shift Monday through Friday and the relevance of their testimony is they witnessed Ken Slaseman's disparate treatment of Complainant Phyllis Holliday.

I have read the above statement, consisting of 3 pages and it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

_____
(Affiant's Signature)

SUBSCRIBED AND (SWORN TO) (AFFIRMED)
BEFORE ME AT NEW CUMBERLAND, PENNSYLVANIA
ON THIS 10 DAY OF JUNE, 1999

_____
(Investigator's Signature)

September 29, 1999

To whom it may concern

My name is Robert L. Ward Jr. I've been employed with the Federal Government for 13 yrs. Mrs. Holliday has asked me to share with you my experiences of discrimination and exclusion while employed within the DDSP-S Storage Branch of the Eastern Distribution Cent[er] housed at the former New Cumberland Army Depot. I a[lso] hold a position with American Federation of Government Employees Local 2004, 4th Vice President, I have been Har[assed] by DDSP-S Storage Branch many time for conducting Union & Labor Issue also been retaliation and reprisal against have taking the issue to the commander level and t[he] issue is cover up. I have also file so several EEO complaint i also experience the agency upper management of DDSP-S is biased. I have experience bias in some EEO complaint and the Grievance procedure. I have be[en] slander in EEO affidavit by DDSP-S Management

for beaning a Union Representative of the Complaint employees.

Robert L Ward Jr
Robert L. Ward Jr
Material Handler
Fourth Vice President, AFG
Local 2004

AFFIDAVIT

COMMONWEALTH OF PENNSYLVANIA
                                          ss:
COUNTY OF YORK

I, Gloria J. King-Monroe, WG-6907-05 Materials Handler, Defense Distribution Center, New Cumberland, PA, hereby swear as follows.

I believe that I have been discriminated against on account of my race (Black), age (DOB: 19520820), disability (physical - permanent back injury) and sex (female), when my Branch Chief, Mr. Frank O'Brien (White), instructed me to return from a light duty assignment with the Office of Family Advocacy to substitute for his secretary who was going out for surgery. After a short period, Mr. O'Brien found out that I was a union steward and he reassigned me to another area, Active Items. The temperature in the room was far too cold. Mr. Kenneth Slaseman (White), my immediate supervisor, sent me to the Health Clinic. Ms. Durand (White), the nurse in the Health Clinic, telephoned Mr. O'Brien to ask what to do with me. He told her to tell me return to the branch, get a chair and sit outside the Active Items Office to answer a telephone located in that office. (Ms. Durand completed a DD Form 689 to this effect.) There were other offices that were not so cold that I could have sat in to answer the telephone, but Slaseman stated that he would not permit me or anyone else in this office area, because he often left employee information on the desk.

I complained about sitting outside of the office and being harassed, I was then instructed to sit in a break room from, intermittently, 23 October to 25 November 1998, but I was given no work assignments, except for taking "Hot Tickets" out to the warehouse. However, my medical restrictions would not permit me to go into an area that had moving equipment to deliver the "Hot Tickets." They stated they had nothing else for me to do, so I was told to sit in the break room. Robert Ward (Black) and Andy Jackson (White) were among those who witnessed co-workers harassing me because I was seen sitting and doing no work. One co-worker (Mr. Thomas Edmondson) said that they should take a rope, tie it around my waist, and make me run to the front door. Later, Mr. Edmondson (White) apologized; he said he didn't mean it and what he really said was that they should tie ropes around the two of us because we both had bad backs.

I drafted a statement which described what occurred at that time. Included in the statement was Edmondson's claim that he was only joking. Jackson signed the statement.

D

The information on my medical condition that I shared with Mr. O'Brian was confidential and I believed he should have treated it as such. Instead, he told a member of the DDSP Hardship Committee, Mr. Jim Ditzler (White), about things un-related to my back surgery. Specifically, he revealed information about a hysterectomy operation in 1997 that had nothing to do with my ability to fulfill the requirements of my position.

On 7 December 1998, I requested, in writing, a shift change in order to be able to attend medical appointments. My immediate supervisor disallowed the shift change. I then requested three (3) levels of management -- Messrs. O'Brien, Messner and Khor (all White) -- to grant the shift change. Neither would grant the requested change in my work shift. I had to go above the chain of command in my division to the Deputy Commander, Mr. Charles Nye (White) for help; Mr. Nye granted the shift change on 11 December 1998. The actions of the three levels of management in denying my request were discriminatory harassment because they had no reasons for denying the change in my work shift since I furnished the medical documentation they requested.

I have read the above statement, consisting of 2 pages, and it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

(Affiant's Signature)

Subscribed and sworn to before me at New Cumberland, PA on this 25th day of March 1999.

(Investigator)

<strong><u>GRIEVANCE</u></strong>

98-062

The Grievance described herein is submitted under the Negotiated Grievance Procedure provisions of the AFGE/DDRE Regional Supplement.

**Grievant's Name/Division/Shift:** <u>Robert L. Ward Jr.,DDSP-SS Mon. - Fri. 1200-830P.M.</u>

**Supervisor's Name/Phone:** <u>Ken Slaseman  770-4194</u>

**Issue:**

1.<u>Reprisal & Harassment , Violation of the Privacy Act of 1974.</u>

2. When and were did it happen? <u>May 8, 1998   DDSP-SS, Branch Office, New Cumberland, Pa 17070</u>

3. Who did it? <u>Ken Slaseman</u>

4. How was it done? <u>Verbal.</u>

**Relief:**

5.<u>Stop being Reprisal & Harassed .</u>

5-19-98   *[signature]*
Date   Signature (Grievant)

19 May 1998   *[signature]*
Date   Signature (Grievant's Representative)

E

**GRIEVANCE** 98-062

The grievance described herein is submitted under the Negotiated Grievance Procedure provisions of the AFGE/DDRE Regional Supplement.

### INITIAL UNION REVIEW

Union steward's name/phone: David Kunkle, Sr., X5645

Date received from grievant: 18 May 1998

[X] Union will represent the grievant. Articles and Sections of the Agreement. Article 1, Section 1-5, Article 2, Sec 1-3, Article 3, Sec 2-4, Article 4, Sec 1-8, Article 36, Sec 1-12, and any and all Articles, Rules, Regulations and Laws as applicable. Privacy Act of 1974.

19 May 1998      _[signature]_
Date                 Signature (Union Steward)

[ ] Union will not represent the grievant for the following reason(s): _____

_____
Date          Signature (Union Official)

_____
Date Received     Signature     (Supervisor/Management Official)

**GRIEVANCE**           98-054

The Grievance described herein is submitted under the Negotiated Grievance Procedure provisions of the AFGE/DDRE Regional Supplement.

**Grievant's Name/Division/Shift:** Robert L. Ward Jr.,DDSP-SS Mon. - Fri. 1200-830P.M.

**Supervisor's Name/Phone:** Ken Slaseman  770-4194

**Issue:**

1. Reprisal togo to Union office to file a grievance on Official Time.

2. When and were did it happen? Building 51-3 DDSP-SS, Active Items, New Cumberland, Pa 17070

3. Who did it?  Ken Slaseman

4. How was it done?  Verbal.

**Relief:**

5. Stop being Reprisal from participation in Union & Labor Relation issues.

4-28-98   *[signature: Robert L Ward]*
Date    Signature (Grievant)

*[signature]*
Date    Signature (Grievant's Representative)

F

<u>**GRIEVANCE**</u>                                                                                              <u>**98-054**</u>

The grievance described herein is submitted under the Negotiated Grievance Procedure provisions of the AFGE/DDRE Regional Supplement.

<u>**INITIAL UNION REVIEW**</u>

<u>Union steward's name/phone: David Kunkle, Sr., X5645</u>

<u>Date received from grievant:  27 April 1998</u>

<u>X Union will represent the grievant.  Articles and Sections of the Agreement.   Article 3, Sec 1-4, Article 4, Sec 1-8, Title #5 US Code 5, section7102,section 7114a ,1-2(a),5(a)(b). and any and all Articles, Rules , Regulations and Laws as applicable.</u>

28 April 1998 _____/s/_____
Date                Signature (Union Steward)

☐ Union will not represent the grievant for the following reason(s): _____

_____        _____
Date                  Signature (Union Official)

_____        _____
Date Received     Signature   (Supervisor/Management Official)