**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT L. WARD,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 1:CV-00-1126** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **DEFENSE LOGISTICS AGENCY** | : | |
| **DEFENSE DISTRIBUTION CENTER,** | : | |
| **Defendant** | : | |

**MEMORANDUM AND ORDER**

Before the Court are motions for summary judgment filed by Plaintiff and Defendant in the above captioned case. For the following reasons, Plaintiff's motion will be denied and Defendant's motion will be granted.

**I.    Background**

Plaintiff Robert L. Ward brings this suit, pro se,[1] against his former employer, Defense Logistics Agency, alleging discrimination on the basis of his race (African-American) and his disability (degenerative disc disease). In his amended complaint, Plaintiff alleges that he was harassed by his supervisor from October 1997 to January 7, 2000. (Doc. No. 7 at 2). He brings his complaint pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 794 (2003), Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 (2003) ("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Title VII").

Plaintiff worked for Defendant as a crane operator. On May 16, 1997, Plaintiff was injured on the job and treated for an inguinal hernia. When he returned to work on June 28, 1997,

---

[1] This Court construes pro se complaints liberally. See Boag v. MacDougall, 454 U.S. 364, 365 (1982); Todaro v. Bowman, 872 F.2d 43, 44 n.1 (3d Cir. 1989).

Plaintiff provided restriction documents from his doctor which limited the maximum amount he could lift to 45 pounds. Defendant imposed a permanent heavy lifting restriction; however, it did not limit Plaintiff's job, which required him to lift no more than 40 pounds while operating the crane. On October 23, 1997, Plaintiff returned to his doctor at the request of his supervisor, Frank O'Brien. Plaintiff's restriction documents from his doctor stated that he would not be permitted to wear any weight around his waist. Accordingly, O'Brien placed Plaintiff on "light duty" since he was unable to wear the safety harness necessary to operate the crane.

On December 29, 1997, O'Brien instructed Plaintiff to return to the doctor to receive a time frame on his job restrictions. Plaintiff did not provide additional documentation, and was assigned back to his original position. However, Plaintiff did not return to this position as he was off work at the beginning of January. Upon his return, on January 5, 1998, Plaintiff provided medical documentation and was given an indefinite weight restriction of 25 pounds and returned to light duty. At some point, Defendant switched from using safety belts in crane operation to using a shoulder harness. After this change, O'Brien requested that Plaintiff provide medical documentation regarding his ability to wear the new safety harness. On February 3, 1998, Plaintiff refused to sign a sheet accepting the shoulder harness and informed O'Brien that he would not take the harness to his doctor to determine whether he could return to his regular duties. Over the next few months, Plaintiff received additional formal requests to sign for the harness, which Plaintiff continued to refuse. On April 7, 1998, Plaintiff met with his union representative and O'Brien, who requested that Plaintiff sign the sheet within 14 days or risk suffering disciplinary action. After the time limit had expired, O'Brien asked Plaintiff if he wanted an extension, which Plaintiff declined. However, O'Brien never disciplined Plaintiff.

2

Plaintiff's more immediate supervisor, Ken Slaseman, was notified of the problem, and contacted Plaintiff for a meeting. Plaintiff asked if he would need a union representative, to which Slaseman replied that he did and suggested Andy Jackson for the meeting. Plaintiff stated that he did not want Jackson to represent him and would rather find his own representative. However, when Plaintiff arrived at Slaseman's office, Jackson and Slaseman were going over documents related to Plaintiff. Plaintiff asked Jackson to leave the meeting, and he complied. Slaseman asked Plaintiff to sign for the harness but Plaintiff again refused. Slaseman also informed Plaintiff that he would be returned to full duty on May 18, 1998 since he lacked adequate medical documentation regarding his work restrictions. Subsequently, Jackson initialed the harness sheet, which was then delivered to Plaintiff by another person.

Plaintiff later provided a doctor's note stating that he should not wear a body harness, so he was never removed from light duty. On October 28, 1998, Plaintiff provided another doctor's note with an indefinite lifting restriction of 25 pounds due to Plaintiff's degenerative disc disease. Plaintiff was then injured in an automobile accident and further job restrictions were imposed at the recommendation of Plaintiff's doctor. Plaintiff's doctor's note dated January 21, 1999 did not contain any restrictions, so Defendant's health clinic issued a "return to duty note." Again, a stalemate ensued with regard to the shoulder harness, which continued until Plaintiff resigned from his position on January 7, 2000.

Plaintiff alleges that throughout this time, he was continually harassed by Frank O'Brien regarding the job restrictions. He states that he was "requested to go back and see my position more than any other employees in my department" and that O'Brien turned Plaintiff's co-workers against him, creating a stressful and hostile environment. (Doc. No. 17, Br. in Supp. at 3)

3

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on May 17, 1998.  His complaint was dismissed and referred to the federal agency he worked for.  On May 28, 1999, Plaintiff filed a complaint with the Defense Distribution Center's Pennsylvania headquarters.  His action was dismissed by the agency for failure to comply with applicable time limits and failure to respond to the agency's request for additional information regarding dates and specifics of the alleged harassment.  Plaintiff appealed the dismissal to the EEOC in August of 1999, but it is unclear from case file attached to Plaintiff's complaint what action, if any, resulted.

## II.    Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  A factual dispute is material if it might affect the outcome of the suit under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is genuine only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party.  Id. at 249.  The nonmoving party receives the benefit of all reasonable inferences.  Sempier v. Johnson & Higgins, 45 F.3d 724, 727 (3d Cir. 1995).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in the complaint.  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 324

4

(1986). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." Id. at 322.

**III.**    **Discussion**

Plaintiff brings his claims of discrimination under three federal anti-discrimination statutes. Each will be considered in turn.

**A.**    **Title VII Prima Facie Case**

Plaintiff alleges that he has suffered disparate treatment based on his race in violation of the Civil Rights Act. Title VII of the Civil Rights Act makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has described the policy behind this provision as follows: "The broad, overriding interest, shared by employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and racially neutral employment and personnel decisions. In the implementation of such decisions, it is abundantly clear that Title VII tolerates no racial discrimination, subtle or otherwise." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801 (1973). Accordingly, "[t]he court's factual inquiry in a Title VII case is whether the employer intentionally discriminated against the employee." Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993) (citing United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711 (1983)).

A plaintiff claiming disparate treatment pursuant to Title VII who lacks direct evidence of

discrimination must initially establish a prima facie case.[2]  McDonald Douglas Corp. v. Green, 411 U.S. 792 (1973); Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318 (3d Cir. 2000). The precise elements of a plaintiff's prima facie case may vary with the particular circumstances. Torre v. Casio, Inc., 42 F.3d 825, 830-31 (3d Cir.1994) (holding that "the nature of the required showing to establish a prima facie case of disparate treatment by indirect evidence depends on the circumstances of the case") (internal quotation marks omitted).

Under the McDonald-Douglas analysis, Plaintiff must show that:  (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) a similarly-situated person, who is not in his protected class, was treated more favorably.  Id.  "Once the plaintiff establishes his or her prima facie case, the burden shifts to the defendant to articulate one or more legitimate, non-discriminatory reasons for its employment decision."  Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 1995).  If the defendant meets its burden, the plaintiff, in order to survive a motion for summary judgment, must point to evidence that:  (1) casts sufficient doubt upon the legitimate reasons proffered by the defendant so that a fact-finder could reasonably conclude that each reason was a fabrication; or (2) allows the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.  Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994).  A plaintiff cannot simply show that the employer's decision was unwise or wrong but must demonstrate  weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons.  Iadimarco v.

---

[2]  The Court notes that Plaintiff has not produced direct evidence of discrimination which, if believed, would prove discrimination "without inference or presumption."  Torre v. Casino, Inc., 42 F.3d 825, 829 (3d. Cir. 1994).  Accordingly, the McDonald-Douglas analysis must be applied.

Runyon, 190 F.3d 151, 166 (3d Cir. 1999).

Defendant argues that Plaintiff's racial discrimination claim should be dismissed because he has not established a prima facie case. This Court agrees. While Plaintiff is a member of a protected class as an African-American, he has not shown that he suffered an adverse employment action, nor has he proffered any evidence that he was treated poorly because of his race, such as showing that white employees were treated more favorably.

An adverse employment action is one which "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Cardenas v. Massey, 269 F.3d 251, 267 n.10 (3d Cir. 2001). Construed liberally, all Plaintiff has alleged in his complaint and other papers is that he was required to provide medical documentation to support his continued assignment to light duty. During Plaintiff's prolonged refusal to fully comply with this requirement, he was kept on light duty and was never required to return to his original job while the restrictions were disputed. There is no evidence that he was otherwise disciplined for his refusal to sign for the harness or provide medical documentation. While Plaintiff may have considered this an inconvenience, it does not rise to the level of adverse employment action.

Moreover, even if this Court could construe this to constitute an adverse action, Plaintiff has not shown or even alleged that white employees were treated more favorably with regards to medical documentation required for work restrictions. He has not pointed to any similarly situated individuals outside his protected class that were given light duty or not required to wear a safety harness without specific medical documentation. Accordingly, Plaintiff's disparate

7

treatment claim must fail.

**B.    Hostile Work Environment**

Plaintiff also claims that he was subjected to a hostile work environment on the basis of his race.  Hostile work environment causes of action "afford employees the right to work in an environment free from discriminatory intimidation, ridicule and insult" even where such conduct does not have a direct economic impact upon the employee.  Meritor Savings Bank v. Vinson, 477 U.S. 57, 65-66 (1986).  In order to establish a claim for employment discrimination due to an intimidating or offensive work environment, a plaintiff must establish, "by the totality of the circumstances, the existence of a hostile or abusive environment which is severe enough to affect the psychological stability of a minority employee."    Aman v. Cort Furniture Rental Corp.,  85 F.3d 1074, 1081 (3d Cir. 1996) (emphasis in original).  Specifically, Plaintiff must show:  (1) that he suffered intentional discrimination because of his race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability.  Id.  This analysis may include an examination of the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Id.

"[O]vert racial harassment is not necessary to establish a hostile environment.  All that is required is a showing that race is a substantial factor in the harassment, and that if Plaintiff had been white [he] would not have been treated in the same manner."  Aman, 85 F.3d at 1083 (citing Andrews v. City of Philadelphia, 895 F.2d 1469,1485 (3d. Cir. 1990).  Plaintiff has not presented

any evidence of overt racial harassment or made any showing that the "harassment" he suffered

was due to his race.  All Plaintiff has established is that he was regularly asked to provide medical

documentation to support his job restrictions.  There is absolutely no indication that these

requests were somehow tied to his race or that they constitute actionable harassment.

Furthermore, O'Brien's actions of turning Plaintiff's co-workers against him, if true, is not linked

to Plaintiff's race in any way.  Plaintiff's detailed recitation of facts pertaining to the harness sheet

and potential privacy violations do not establish that insisting that Plaintiff sign the form was

racially motivated or unevenly enforced.  Without more, this claim must also fail.

### C.    Disability Discrimination

Section 504(d) of the Rehabilitation Act  provides that "the standards used to determine

whether this section has been violated in a complaint alleging employment discrimination under

this section shall be the standards applied under Title I of the Americans with Disabilities Act of

1990."  29 U.S.C. § 794(d).  Accordingly, this Court will consider these claims together.

To establish a prima facie case under the ADA, Plaintiff must show:  (1) he is disabled

within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of

the job; and (3) he has suffered an adverse employment decision because of discrimination.

Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 568 (3d Cir. 2002) (citing Taylor v.

Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)).  The elements of a prima facie case

under the Rehabilitation Act are very similar:  "the employee bears the burden of demonstrating

(1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential

functions of the job, with or without reasonable accommodations by the employer; and (3) that he

or she was nonetheless terminated or otherwise prevented from performing the job."  Donahue v.

Consolidated Rail Corp., 224 F.3d 226, 229 (3d Cir. 2000).  In either case, Plaintiff bears the burden of demonstrating that reasonable accommodations were possible.  Id.; Taylor, 184 F.3d at 319-20.  "If the plaintiff is able to meet these burdens, the defendant then bears the burden of proving, as an affirmative defense, that the accommodations requested by the plaintiff are unreasonable or would cause an undue hardship on the employer."  Donahue, 224 F.3d at 229 (citing Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir.1996)).

Defendant does not dispute that Plaintiff qualifies as a disabled individual and Plaintiff's degenerative disc condition, as supported by medical records submitted with his brief, appears to meet the definition of "disability" in the ADA.  See 42 U.S.C. § 12102(2)(A)-(C) (2003) (defining disability as  "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual (B) a record of such impairment; or (C) being regarded as having such an impairment.").  It is also undisputed that Defendant provided reasonable accommodations such that Plaintiff was able to perform his job.  Therefore, Plaintiff must show only that he suffered an adverse employment decision and that he was terminated or otherwise prevented from performing the job.  Taylor, 184 F.3d at 319-20; Donahue, 224 F.3d at 229.

As discussed above, Plaintiff cannot show that he suffered an adverse employment decision on the basis of his disability or any other reason, because he was not terminated, disciplined, or unlawfully harassed.  Rather, Plaintiff was accommodated and given months to comply with Defendant's request for medical documentation, all the while being given the work restrictions he requested.  Likewise, Plaintiff has not shown that he was in any way prevented from performing the job.  Accordingly, Plaintiff's claim for disability discrimination fails.

**IV.    ORDER**

Therefore, **IT IS ORDERED THAT** Plaintiff's motion for summary judgment (Doc. No. 15) is **DENIED**.

**IT IS FURTHER ORDERED THAT** Defendant's motion for summary judgment (Doc. No. 23) is **GRANTED**.  The Clerk of Court shall enter judgment for Defendant and against Plaintiff on all claims.  The Clerk of Court shall close the file.

_____S/ Yvette Kane_____
Yvette Kane
United States District Judge

Date: December 9, 2003