**UNREPORTED- NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 04-1158
_____

ROBERT L. WARD, JR.,

Appellant

v.

DEFENSE LOGISTICS AGENCY
DEFENSE DISTRIBUTION CENTER
_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(M.D. Pa. Civ. No. 00-cv-01126)
District Judge:  Honorable Yvette Kane
_____

Submitted Under Third Circuit LAR 34.1(a)
June 10, 2004

Before: ALITO, MCKEE AND COWEN, CIRCUIT JUDGES

(Filed August 24, 2004)

_____
OPINION
_____

PER CURIAM

Appellant Robert Ward, proceeding pro se, appeals an order of the United States

District Court for the Middle District of Pennsylvania granting summary judgment in

favor of the Defense Logistics Agency, Defense Distribution Center (the "DLA") in his

employment discrimination action. For the reasons that follow, we will affirm.

Ward worked as a crane operator at the DLA. On May 16, 1997, he was injured at work and diagnosed with an inguinal hernia. He returned to work on July 28, 1997. His doctor restricted the weight he could lift to 45 pounds. The DLA's health clinic imposed a permanent 45-pound lifting restriction, which did not limit Ward's ability to operate the crane. On October 21, 1997, Ward complained that operating the crane hurt his leg. He went to his doctor who gave him a note stating that he must avoid wearing any weight around his waist. Ward's second-level supervisor, Frank O'Brien, placed Ward on light duty because Ward could not wear the safety belt required to operate the crane.

In late December 1997, O'Brien asked Ward to return to the doctor to determine if he was still restricted from wearing the safety belt. Ward refused to do so. Ward then was off duty, and when he returned to work in early January 1998, he submitted a doctor's note limiting his ability to lift weight to 25 pounds and his ability to sit to 15 minutes per hour. Ward was assigned to light duty. The DLA then replaced the safety belt with a shoulder harness. O'Brien asked Ward to take the harness to his doctor to determine if he could wear it. Ward refused. On April 7, 1998, O'Brien formally requested by letter that Ward do so within 14 days. Ward refused to sign an acknowledgment of O'Brien's written request. After 14 days passed, O'Brien asked Ward if he wanted an extension of time and Ward declined.

On May 6, 1998, Ward's first-level supervisor, Ken Slaseman, notified Ward by

letter that he would be returned to full duty on May 18, 1998 because he lacked adequate medical documentation regarding his work restrictions. Ward refused to sign an acknowledgment of his receipt of the letter. Slaseman then met with Ward and asked him to take the harness to his doctor. Ward refused. On May 27, 1998, Slaseman directed Ward to report to his full duty position or provide medical documentation within three days. Ward then provided a doctor's note dated June 1, 1998 stating that he should not wear the harness. He continued on light duty. On October 28, 1998, Ward provided another doctor's note with an indefinite lifting restriction of 25 pounds due to degenerative disc disease.

Ward was then injured in a car accident and his doctor imposed additional restrictions for a two week period. As a result of his injuries, Ward was off duty from January 6, 1999 to January 20, 1999. He returned to work on January 21, 1999. On March 17, 1999, the DLA health clinic issued a note stating that Ward's most current doctor's note did not contain any restrictions. Ward did not comply with subsequent written directives on April 15, 1999 and July 29, 1999 to get a medical examination, and he refused to acknowledge receipt of the letters, which noted that failure to comply may be grounds for disqualification from his position or disciplinary action. Ward resigned on January 7, 2000.

Ward, who is African-American, filed suit against the DLA alleging discrimination based on his race and his disability pursuant to the Rehabilitation Act of 1973, 29 U.S.C.

§ 794, Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111-12117 ("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17. In his amended complaint, he alleged that O'Brien harassed him from October 1997 to January 7, 2000.

The District Court granted the DLA's motion for summary judgment and denied Ward's summary judgment motion. It explained that Ward had not established a prima facie case of discrimination under Title VII of the Civil Rights Act because he had not shown that he suffered an adverse employment action. See Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999) (setting forth burdens of proof and elements of a prima facie case in a race discrimination case). The District Court stated that all Ward alleged in his filings is that he was required to provide medical documentation to support his continued assignment to light duty. Although he refused to comply, he was kept on light duty and was not disciplined. The District Court further stated that even if Ward suffered an adverse action, he had not shown or even alleged that white employees were treated more favorably with regards to medical documentation required for work restrictions.

The District Court also granted summary judgment for the DLA on Ward's hostile work environment claim. It explained that Ward produced no evidence of overt racial harassment, and made no showing that the alleged harassment he suffered was due to his race. See Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081-82 (3d Cir. 1996)

(setting forth requirements to establish a claim for employment discrimination due to a hostile work environment).  The District Court stated that all Ward established is that he was regularly asked to provide medical documentation to support his job restrictions, and that if O'Brien did turn Ward's co-workers against him, that action was not linked to Ward's race.

Finally, the District Court granted summary judgment on Ward's claims of disability discrimination under the Rehabilitation Act and the ADA, concluding that Ward did not establish a prima facie case under either of these statutes.  The District Court found it undisputed that Ward is disabled and that the DLA provided reasonable accommodations so that Ward was able to perform his job.  However, the District Court concluded that Ward did not show that he suffered an adverse employment decision based upon his disability or any other reason because he was not terminated, disciplined or unlawfully harassed.  It further stated that Ward was given months to get the requested medical documentation and was given the work restrictions he requested.  See Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 568 (3d Cir. 2002) (setting forth elements of a prima facie case under the ADA); Donahue v. Consolidated Rail Corp., 224 F.3d 226, 229 (3d Cir. 2000) (setting forth elements of a prima facie case under the Rehabilitation Act).

This appeal followed.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review a grant of summary judgment de novo and, like the District Court, we view the

record in the light most favorable to Ward. <u>Jones</u>, 198 F.3d at 409.

In his brief, Ward states that O'Brien harassed him every week, and that he was asked to see his doctor more than other employees in his department. He states that another employee told him that O'Brien told her not to talk to him, that Slaseman told him that he was lazy and that O'Brien turned his co-workers against him. Ward states that O'Brien and the DLA are biased and unfavorable to some African-Americans. Ward, however, points to no evidence supporting his discrimination claims, and the record is devoid of any such evidence.

In support of his summary judgment motion, Ward submitted evidence of his medical condition. In response to the DLA's summary judgment motion, Ward submitted an affidavit that he prepared related to a co-worker's claim of discrimination against the DLA based upon race, disability, age and gender. In the affidavit, Ward states that two employees used racial slurs when speaking to his co-worker, and that Slaseman did not respond to one of the incidents. Ward also submitted the affidavit of another co-worker claiming discrimination based upon race, age, disability and gender. The employee claimed that her co-workers harassed her when she was restricted from working due to a back injury, and when management denied her requests for a shift change. These submissions are insufficient to create a genuine issue of material fact in the present case.

Ward has not shown that the District Court erred in granting summary judgment for the DLA. Accordingly, we will affirm the order of the District Court.